IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

FILED
MAY 1 6 2005
ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

| | |
|---|---|
| SHARON SANDOZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CIV-04-658-W |
| ) | |
| REASSURE AMERICA LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter comes before the Court on the Preliminary Motion for Summary Judgment filed by defendant Reassure America Life Insurance Company ("Reassure"). Plaintiff Sharon Sandoz has responded in opposition to the motion, and Reassure has filed a reply, a supplemental brief to which Sandoz has responded and a response addressing new matters. Upon review of the record, the Court makes its determination.

Sandoz commenced this action in the District Court for Oklahoma County, Oklahoma, on January 29, 2004, alleging in her state court petition that Reassure had breached the terms of the disability income insurance policy it had issued to Sandoz when it wrongfully discontinued payment of Sandoz's disability benefits. Reassure removed the matter on May 26, 2004, and alleged that this Court had subject matter jurisdiction because the parties were of diverse citizenship and the amount in controversy exceeded $75,000.00, exclusive of interest and costs.

The instant motion is based upon the following undisputed facts:

1. On May 18, 2001, Sandoz submitted a claim for disability benefits to Reassure.

2. On July 19, 2001, Sandoz filed a petition in the United States Bankruptcy Court

for the Western District of Oklahoma, seeking relief under Chapter 13 of the Bankruptcy Code. In re Sandoz, No. 01-17453-TS.

3. Sandoz retained attorney Elaine M. Dowling to assist her in that proceeding, and John T. Hardeman was appointed as the trustee of the bankruptcy estate ("Trustee").

4. At the time she filed her bankruptcy petition, Sandoz also submitted a schedule of her personal property. In completing the same, Sandoz responded in the negative to the inquiry about the existence of any "[o]ther contingent and unliquidated claims . . . ."

5. On that same date, Sandoz also submitted a proposed plan ["Plan"] to pay creditors over a four-year period. In her proposal, Sandoz stated that her Plan would be funded by her "monthly take home" income. Her filings indicated that her primary income was derived from her employment with the Internal Revenue Service.

6. The Honorable John Teselle, United States Bankruptcy Judge for the Western District of Oklahoma, confirmed the Plan on September 5, 2001.

7. On February 20, 2002, Reassure approved Sandoz's claim for benefits and in April 2002, Sandoz not only received back benefits in the amount of $18,000.00, but also began receiving monthly benefits in the amount of $1000.00.

8. Sandoz did not amend her bankruptcy papers to include these payments.

9. On March 20, 2003, the Trustee moved to dismiss Sandoz's bankruptcy case because she had failed to make certain monthly payments as required under the Plan. By agreement of the parties and with Judge TeSelle's approval, the matter was resolved.

10. Reassure stopped payment of Sandoz's disability benefits, effective October 8, 2003.

11. On January 27, 2004, Sandoz commenced the instant action in the District

Court of Oklahoma County, Oklahoma. She did not amend her bankruptcy papers to include the causes of action set forth in her state court petition.

12. On March 2, 2004, the Trustee again sought dismissal of Sandoz's bankruptcy case for failure to make regular monthly payments. In response, Sandoz contended that "[s]he ha[d] had an interruption in her disability payments . . . ." The matter was again resolved by agreement on June 17, 2004.

13. It was only after the Trustee had received Sandoz's response in March 2004 to his Motion to Dismiss and resolved the issue, that the Trustee learned that Sandoz had been receiving disability payments and it was only after the Trustee had been contacted by Reassure's counsel in September 2004, that the Trustee became aware that Sandoz had filed suit against Reassure. See Affidavit of John Hardeman (April 8, 2005).

Reassure has asserted various arguments why it is entitled to summary judgment in this matter. All arguments are grounded on Sandoz's failure to disclose in her initial bankruptcy papers that she had filed a claim for disability benefits (and thus, potentially was entitled to the same) and on her failure to disclose while the bankruptcy action was pending, that she not only had received disability benefits for two years, but also had commenced the instant action after payment of those benefits ceased. In response, Sandoz has contended that she did not include these matters in her initial bankruptcy papers because Reassure had not yet investigated and approved her claim for disability benefits and thereafter, because "[t]he disability payment[s] received . . . did not supplement . . . [her] income (and therefore constitute another asset), but rather . . . replaced income lost . . . due to her inability to work." Plaintiff's Response to Supplemental Brief at 10. Thus, according to Sandoz, despite the fact the source of the income and its

amount changed, "[t]here was no additional asset to disclose." Id. Sandoz has also contended that these undisclosed matters were not property or assets of her bankruptcy estate and that she was therefore not required to amend her bankruptcy papers to include the same.

Reassure has first argued that it is entitled to summary judgment because Sandoz lacks standing to bring this action. When an individual files a petition in bankruptcy, the individual's property becomes part of the bankruptcy estate, 11 U.S.C. §§ 541(a)(1), 1306, and remains so until it is either administered or abandoned by the bankruptcy trustee under the terms of the Bankruptcy Code. Estate property includes any causes of action or claims, liquidated or unliquidated, listed or unlisted, scheduled or unscheduled, that have accrued to, or are possessed by, the debtor at the time the bankruptcy proceeding is commenced as well as "[a]ll property . . . that the debtor acquires after the commencement of the case . . . ." Id. § 1306(a)(1). Because these causes of actions or claims become part of the estate, the individual loses standing to litigate them, and the bankruptcy trustee becomes the real party in interest to prosecute the same.

Sandoz has relied upon title 11, section 1327(b) of the United States Code to argue that she is the real party in interest because Judge TeSelle has confirmed her proposed Plan and that upon confirmation, all property that was once arguably part of the bankruptcy estate vested in her. Sandoz's reliance on section 1327(b) is misplaced.

That statute provides that "the confirmation of a plan vests all of the property of the estate in the debtor," 11 U.S.C. § 1327(b), "[e]xcept as other provided in the plan or the order confirming the plan." Id. In the instant case, Judge TeSelle's Order confirming the Plan expressly provided that "[a]ll Property shall remain property of the estate and shall

vest in the debtor[] only upon dismissal, discharge, conversion, or other order of the Court." Order at 2, ¶ 9 (September 5, 2001). Thus, the Trustee, and not Sandoz, is the real party in interest to prosecute this action. E.g., Rule 6009, F.R.Bankr.P.[1]

Reassure has also argued that it is entitled to summary judgment because Sandoz is judicially estopped from pursuing the instant causes of action.[2] The doctrine of judicial estoppel precludes a party from asserting inconsistent positions in litigation. In applying the doctrine in connection with bankruptcy cases, courts have held "that judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court . . . ." De Leon v. Comcar Industries, Inc., 321 F.3d 1289, 1291 (11th Cir. 2003).[3]

---

[1] Rule 17(a), F.R.Civ.P., provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." In light of the Court's ruling with regard to the doctrine of judicial estoppel, the Court finds that neither substitution nor joinder of the Trustee as a party to this action is necessary or warranted.

[2] The United States Court of Appeals for the Tenth Circuit recently acknowledged and addressed the doctrine of judicial estoppel, albeit in an entirely different context, and it recognized some of the "factors which other courts have typically used to determine when to apply judicial estoppel." Johnson v. Lindon City Corporation, 2005 WL 941642 *3 (10th Cir. April 25, 2005). Relevant factors included whether "'a party's later position . . . [was] "clearly inconsistent" with its earlier position,'" id. (quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)), "'whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled,"'" id. (quoting New Hampshire, 532 U.S. at 750), and "'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" Id. (quoting New Hampshire, 532 U.S. at 751).

[3] In applying the doctrine of judicial estoppel, courts have found no distinction should be made because of the type of bankruptcy proceeding initiated by the plaintiff. "[A]ny distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of

Sandoz has contended that the doctrine of judicial estoppel is inapplicable and does not bar recovery in this case. She has argued that she has not taken inconsistent positions because the disability payments merely replaced the income she lost when she became disabled and thus, neither these funds nor the instant lawsuit constitute a new or additional asset. The Court disagrees and finds under the undisputed facts that Sandoz is judicially estopped from pursuing this lawsuit.

"'[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims.'" In re Superior Crewboats, Inc., 374 F.3d 330, 335 (5th Cir. 2004)(quoting In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999)(emphasis deleted)). Nevertheless, Sandoz did not in her bankruptcy proceeding disclose[4] either her claim for disability benefits, her receipt of such benefits or the existence of this lawsuit.[5]

Furthermore, Sandoz's omissions are not the result of simple error or inadvertence. Rather, deliberate action on her part can be inferred because Sandoz not only had knowledge of the undisclosed claim for benefits, the payment of those benefits as well as the cessation of payment, and the commencement of this lawsuit, but also had a motive

---

judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies." De Leon v. Comcar Industries, Inc., 321 F.3d 1289, 1291 (11th Cir. 2003). "[A] financial motive to secret assets exists under Chapter 13 as well as under [other] Chapter[s] . . . because the hiding of assets affects the amount to be discounted and repaid." Id.

[4]The Court finds the notice belatedly given to the Trustee is not sufficient to satisfy the affirmative and mandatory disclosure requirements.

[5]The omission of a cause of action or claim "from . . . mandatory bankruptcy filings is tantamount to a representation that no such claim existed." In re Superior Crewboats, Inc., 374 F.3d 330, 335 (5th Cir. 2004)(citation omitted). The assertion of the cause of action or claim in a subsequent judicial proceeding would be a "blatant inconsistency." Id.

for nondisclosure. E.g., Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1287 (11th Cir. 2002)(knowledge of claims and motive to conceal are sufficient from which to infer intentional manipulation). The court and litigants in the bankruptcy proceeding have arguably been misled by Sandoz's failure to reveal first that she was receiving benefits necessary to maintain and fund her Plan and that absent payment by Reassure of such benefits, she cannot comply with the terms of the Plan and second, that she has initiated legal action to recover these benefits and other relief. Such disclosures would have assisted Judge TeSelle in making fully informed decisions about Sandoz's Plan and would have enabled Sandoz's creditors, who relied upon Sandoz's schedules, in determining the appropriate course of action.

Accordingly, the Court finds Reassure is entitled to judgment as a matter of law in this matter,[6] and thus, GRANTS Reassure's Preliminary Motion for Summary Judgment.[7]

ENTERED this 16th day of May, 2005.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

[6] Sandoz has urged the Court to permit, if necessary, amendment of her bankruptcy papers. Judicial estoppel was designed to prevent the very actions about which Reassure has complained. Accordingly, the Court declines Sandoz's request. E.g., Superior Crewboats, 374 F.3d at 336 (allowing amendment only after omission has been challenged by adversary suggests debtor should consider disclosing assets only if concealment is revealed).

[7] In light of its disposition of this matter, the Court has not considered the sanctions requested by Reassure in its Motion for Rule 37/41(b) Sanctions. Acknowledging the difficulties Reassure experienced in preparing its Preliminary Motion for Summary Judgment without Sandoz's responses to its discovery requests, the Court notes that Reassure has now had the benefit of Sandoz's responses and has had the opportunity to supplement its request for summary judgment.